```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
_____
                              )
UNITED STATES OF AMERICA      )
                              )
     v.                       )   19-cr-10017-IT-9
                              )
PETER JAN SARTORIO,           )
                              )
     Defendant.               )
_____)
```

DEFENDANT PETER JAN SARTORIO'S SENTENCING MEMORANDUM

For the reasons presented herein, Peter Jan ("PJ") Sartorio respectfully requests that the Court sentence him to a one-year term of probation, with 250 hours of community service as a special condition of probation, and a fine of $9,500.

A.   The Sentencing Framework

The Presentence Investigation Report, dated October 4, 2019 (the "PSR"), properly calculates Mr. Sartorio's guideline sentencing range as 0-6 months, based on a total offense level of 5 and a criminal history category of I.  PSR ¶¶ 59, 64.  As in all sentencing proceedings, this Court must fashion a sentence that is "sufficient, but not greater than necessary" to serve the enumerated statutory goals.  18 U.S.C. § 3553(a).  Among other things, the Court should consider the nature and extent of the defendant's particular role in the offense; his individual circumstances; sentences imposed and to be imposed on similarly situated individuals; specific and general deterrence; and the

likelihood of recidivist behavior.  Id.  In the circumstances of this case, the defense respectfully submits that a sentence of one year of probation, a $9,500 fine, and 250 hours of community service is "sufficient, but not greater than necessary" to serve § 3553(a)'s sentencing goals.[1]

    B.    <u>Personal Background</u>

PJ Sartorio is 54 years old.  He was born in San Francisco, CA, to Peter Anthony Sartorio and Inga-Lill ("Inky") Sandelin (now Amoroso).  Mr. Sartorio's parents separated when he was 12 years old.  Both have remarried and Mr. Sartorio maintains a close relationship with his parents, stepparents, and stepsiblings.  Mr. Sartorio had a healthy, middle-class upbringing.  PSR ¶¶ 69-70.  Mr. Sartorio and his wife, Tracy, have been married since 1996 and maintain a healthy, middle-class lifestyle.  They have two daughters, ages 19 and 16.  Pertinent information concerning Mr. Sartorio's family is contained in the PSR at ¶¶ 78-84.

---

[1] The plea agreement provides that the government will recommend a fine of $9,500.  This amount is reasonable given Mr. Sartorio's financial situation relative to the other defendants.  See PSR ¶ 90.  Mr. Sartorio hopes that the probation office will work collaboratively with him to devise a community service program that will provide him the opportunity for direct, hands-on work with underserved students, whether that entails helping with schoolwork, coaching a sport, or something similar that the probation office deems appropriate.

2

Mr. Sartorio is the founder of a small, natural-food company.  Details concerning this business, and Mr. Sartorio's prior endeavors in the natural, specialty food business, are contained in the PSR at ¶¶ 90-93.  As depicted in the PSR, and the letters attached hereto as Exhibit A, Mr. Sartorio is a small-scale entrepreneur.  He is neither rich nor famous -- and he has no aspirations to achieve either status.  Mr. Sartorio's nascent, small business has struggled since his arrest in this case and it is unclear whether it will survive.  See PSR ¶ 90.[2]

Many of Mr. Sartorio's friends, neighbors, business associates, and family members have written letters that are attached hereto as Exhibits A1-16.  The letters offer different perspectives of Mr. Sartorio.  In the aggregate, the choice of words and phrases paint a distinct picture -- "warm and caring person," "unpretentious and self-effacing," "generous . . . and good-hearted," "kind . . . and dependable," "empathy," "compassion," "kindness," "ability to . . . empathize," "one of the kindest people I know and is always caring," "sensitive, compassionate . . . always concerned with other people's feelings," "ethical approach to business," "generosity," "one of the friendliest and most endearing people we have ever met," "compassion," "kindness and thoughtfulness."

---

[2] See also Letters attached hereto as Exhibit A-1 and A-3.

    C.    <u>PJ Sartorio is Genuinely and Unequivocally Remorseful for Cheating on the ACT</u>

Mr. Sartorio was the first of the eleven defendants in this case to go on record that he was pleading guilty. On April 3, 2019, he filed a motion advising the Court that he intends to plead guilty.[3] The significance of this is not necessarily that Mr. Sartorio was first but *why* he was first. Mr. Sartorio was first because he accepted from the very outset that he was guilty, that there were no excuses, and that he alone was to blame. He didn't need to review any discovery, investigate potential loopholes, or evaluate which way the wind was blowing. He knew instinctively that the right thing to do was take full and unequivocal responsibility for his offense.

Perhaps more importantly, Mr. Sartorio recognized from the outset that the victims of his crime were the hard-working kids and families who did not cheat on the test, and who deserved a fair and level playing field. Mr. Sartorio is remorseful, not because he got caught, but because, despite his advantages in life, he nevertheless "cut the line." Mr. Sartorio gets it. He accepts that he is solely responsible for his conduct and feels genuine remorse for the victims of his crime.

---

[3] Two days later, on April 5, 2019, Gordon Caplan issued a press release stating that he too intends to plead guilty. The others followed thereafter.

4

D. **A Probationary Sentence is Appropriate in this Case**

The guidelines, of course, specifically authorize the Court to impose a sentence of probation for defendants, like Mr. Sartorio, who are first-time offenders and whose guideline range falls within Zone A. See USSG §5B 1.1; see also §5B (Introductory Comment) ("The Comprehensive Crime Control Act of 1984 makes probation a sentence in and of itself."). The Sentencing Commission has recently amended the guidelines "as a reminder to consider non-incarceration sentences" for non-violent first offenders like Mr. Sartorio. See Amendment 811, USSG, Supplement to Appendix C (November 1, 2018). Amendment 811 inserted a new Application Note (now Application Note 4) to the Commentary to USSG §5C1.1, which provides as follows:

> If the defendant is a nonviolent first offender and the applicable guideline range is in Zone A or B of the Sentencing Table, the court should consider imposing a sentence other than a sentence of imprisonment, in accordance with subsection (b) or (c)(3). See 28 U.S.C. § 994(j). For purposes of this application note, a 'nonviolent first offender' is a defendant who has no prior convictions or other comparable judicial dispositions of any kind and who did not use violence or credible threats of violence or possess a firearm or other dangerous weapon in connection with the offense of conviction.

This provision implements language in 28 U.S.C §994(j), providing that "[t]he Commission shall insure that the guidelines reflect the general appropriateness of imposing a sentence other than

5

imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence." USSG, Supplement to Appendix C (November 1, 2018).

The Supreme Court recognized in Gall v. United States, 552 U.S. 38, 48-49 (2007), that probation "is not an act of leniency" but a "substantial restriction of freedom." As the Gall Court observed:

> [O]ffenders on probation are . . . subject to several standard conditions that substantially restrict their liberty. Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. USSG §5B1.3. Most probationers are also subject to individual "special conditions" imposed by the court.

Id. (citations omitted). See also United States v. Knights, 534 U. S. 112, 119 (2001) ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled'")(quoting Griffin v. Wisconsin, 483 U. S. 868, 874 (1987)).

Since Gall, courts have frequently recognized that probation is a real sentence that serves real jurisprudential considerations. See, e.g., United States v. Ramos, No. 04-cr-10275-NG (D.Mass.2008) ("Gall recognized . . . that probation is not nothing, that there are substantial restrictions on an

6

individual's freedom in probation, that we can structure a probationary sentence that meets all the purposes of sentencing, and that is entirely appropriate").[4]

It is difficult to discern any significant deterrent value to incarcerating Mr. Sartorio at this stage. As previously described, Mr. Sartorio genuinely and unequivocally accepts responsibility for his crime and recognizes that the victims of his offense are the students who took the test without seeking unfair advantage. Mr. Sartorio does not blame Singer, or anyone or anything else -- he fully recognizes, without equivocation, that he and he alone is responsible for what he did. That self-awareness made it easy for him to be the first defendant to publicly state his intention to plead guilty.[5]

Furthermore, unlike other defendants, Mr. Sartorio's offense did not include any of the aggravating factors summarized by the government in its consolidated sentencing memorandum -- i.e., he was not a repeat player; his participation was passive rather than active (as defined by the

---

[4] See also United States v. Huffman, 19-10117-IT, Dkt. #424, at 11-17 (sentencing memorandum showing that the overwhelming majority of defendants in the 0 to 6-month range in this district and nationally are sentenced to non-incarceration sentences).

[5] Mr. Sartorio is also the only one of the eleven defendants whose plea agreement contains an agreed upon GSR of 0-6 months. Ms. Huffman's plea agreement provides that the government takes the position that her GSR is 4-10 months, based on a gain or loss of more than $15,000 but not more than $40,000. See Huffman Plea Agreement, dated March 27, 2019, at 2. The government subsequently agreed, shortly before sentencing, that it would take the position at sentencing that Ms. Huffman's GSR was 0-6 months.

government); he did not involve his child in the scheme (and his child had no knowledge of the scheme); he did not occupy a position of trust; he did not engage in the type of conduct attributed to other defendants by the government "as the scheme unraveled and following its exposure;" he did not seek to "write off" the payment to Singer for tax purposes; and, to the extent relevant, his payment amount was the lowest of the eleven defendants (along with that of Ms. Huffman).  <u>See</u> Government's Consolidated Sentencing Memorandum at 22-26 (describing the "Key Factors to be Considered to Determine Relative Culpability").[6]

With the sentencings to date, the Court has perhaps sent a deterrent message that federal prosecution can serve as a leveler to wealth, power, and fame.  As shown in the PSR and letters attached hereto, however, by comparison with the other defendants in this case, no such leveling or messaging is necessary or applicable in the case of Mr. Sartorio.  Indeed, Mr. Sartorio's case presents the opportunity for a different message -- that federal sentencing is individualized and that incarceration is not always the answer.

---

[6] Like Ms. Huffman, Mr. Sartorio hired Singer to provide tutoring services for his child.  In both cases, the child in question had legitimate medical issues which would enable her to receive extra time and special accommodations for standardized testing.  <u>See, e.g.</u>, PSR ¶¶ 82, 84.  In both cases, the defendant subsequently made the decision to pay Singer $15,000 to assure a better outcome on the test.  In neither case did the parent involve the child in the scheme and in neither case did the child have knowledge of the scheme.

8

<u>Conclusion</u>

For the foregoing reasons, Mr. Sartorio respectfully requests that the Court sentence him to a one-year term of probation, with 250 hours of community service as a special condition of probation, and a fine of $9,500.

                              Respectfully submitted,

                              <u>/s/ Peter K. Levitt</u>
                              Peter K. Levitt (BBO# 565761)
                              Donnelly Conroy & Gelhaar, LLP
                              260 Franklin Street, Suite 1600
                              Boston, Massachusetts 02110
                              (617) 720-2880
                              pkl@dcglaw.com

Dated: October 4, 2019

**CERTIFICATE OF SERVICE**

I, Peter K. Levitt, hereby certify that on this date, October 4, 2019, a copy of the foregoing document has been served via the Electronic Court Filing system on all registered participants.

                              <u>/s/ Peter K. Levitt</u>
                              Peter K. Levitt