UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>) Criminal No.: 19-10117-IT-9<br>(9)   PETER JAN "P.J." SARTORIO, )<br>)<br>Defendant )<br>) | |

## GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM

The government respectfully submits this supplemental memorandum in connection with the sentencing of defendant Peter Jan "P.J." Sartorio.

Sartorio, a successful entrepreneur, paid $15,000 to cheat on his daughter's ACT exam and fraudulently inflate her score. Sartorio took steps to conceal his fraud, paying co-conspirator William "Rick" Singer in cash, and structuring the withdrawals of that cash from his accounts to avoid bank reporting requirements. His daughter used the fraudulent ACT score as part of her application to numerous universities.

For his crime, Sartorio should be sentenced to a term of one month of incarceration – within the advisory Guidelines range of zero to 6 months – followed by 12 months of supervised release and a fine of $9,500.

### I.   Sartorio Exploited the Testing Accommodation Process To Facilitate the Cheating Scheme

By at least the spring of 2017, Sartorio had agreed with Singer to engage in the exam cheating scheme for Sartorio's daughter. In May of that year, Sartorio's wife asked Singer and one of his employees how to obtain a testing accommodation from the ACT. The accommodation enabled Sartorio's daughter to take the exam at the West Hollywood Test Center Singer controlled

through a co-conspirator, Igor Dvorskiy. In May, after ACT granted the accommodation based on Sartorio's daughter's legitimate need for extra time on the exam, Dvorskiy arranged for her to take the ACT at the West Hollywood Test Center – hundreds of miles from Sartorio's home in Menlo Park, California – instead of at her own high school. The ACT authorized the move later that month.

Sartorio's daughter took the ACT on June 10, 2017, along with two other students. She did not use the extra time she had been allotted. After she had completed the exam, two corrupt proctors corrected her answers and secured a score for her in the 86th percentile. Although Sartorio's daughter had not previously taken the ACT, she had scored between the 42nd and 51st percentiles for her grade level in successive administrations of the PSAT.

Sartorio paid Singer in cash, withdrawing the money in increments of between $4,000 and $6,000 from two different accounts in three separate transactions between June 16 and June 20, 2017 – even though each of those accounts had substantial balances at the time that were sufficient to cover the entire amount. By structuring his withdrawals as multiple transactions of less than $10,000 each over the course of five days, Sartorio avoided bank reporting requirements. On a subsequent call with Singer, which was consensually recorded, Sartorio explained that their scheme had left no incriminating paper trail. He told Singer:

> There is no-- no-- there is no record on my end like a 1040. There is nothing on my end that shows that your company, Rick, or anybody, received any cash payments. Only payments they could look at would be an invoiced amount or an actual check. And that what w-- that was already discussed. But anything that was done verbally, that was verbal and there's no record. There's nothing. There's nothing.

## II. Sartorio Should Be Sentenced to One Month in Prison, One Year of Supervised Release and a Fine of $9,500

Sartorio's conduct warrants a sentence of imprisonment. He cheated to help his daughter get into college at the expense of a more qualified candidate. While standardized test scores are only one component of the application process, they are significant, and the huge jump in Sartorio's daughter's score made her a viable candidate for colleges for which she would not otherwise have qualified for admission. Though he didn't buy his daughter an admissions spot directly, Sartorio – like other participants in the exam cheating scheme – bought her a test score that he knew would give her an illicit edge over other applicants. The whole point of the scheme was to use the fraudulent score to steal a spot from someone else.

Like other defendants, Sartorio also exploited the testing accommodations process to facilitate the fraud, rather than to address his daughter's legitimate need for extra time on the exam.

And, of course, Sartorio knew that what he was doing was wrong. He took proactive steps to cover up his crime, paying Singer in cash so that the transaction would be untraceable, and structuring his cash withdrawals over days, so they wouldn't trigger bank reporting requirements. This was not something Singer suggested to him. It was Sartorio's idea, an independent contribution to the scheme, designed to make it harder to detect. As Sartorio himself explained to Singer: "There is nothing on my end that shows that your company, Rick, or anybody, received any cash payments. . . . There's nothing."

Finally, the same considerations that supported sentences of incarceration for the other defendants in this case, including the need for general deterrence, warrant a jail sentence here. Crimes like this one – committed in secret and paid for in cash – are difficult to detect, and still more difficult to prosecute. When discovered, they must have meaningful consequences. Prison

will deter other would-be cheaters by sending an unmistakable message that buying fraudulent test scores is a serious crime that will, if uncovered, lead to serious punishment.

## **Conclusion**

For these reasons, the government respectfully requests that the defendant be sentenced to a term of incarceration of one month, a fine of $9,500, and 12 months of supervised release.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:  /s/ Kristen A. Kearney
ERIC S. ROSEN
JUSTIN D. O'CONNELL
LESLIE A. WRIGHT
KRISTEN A. KEARNEY
Assistant United States Attorneys

Date: October 4, 2019